UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DOROTHY FIGUROWSKI,

         Plaintiff,      14-CV-07032 (JS)(AKT)

   - against -

MARBIL INVESTORS, LLC, WILLIAM J. CHRISTIE   Filed Electronically
and EMMETT CHRISTIE,

         Defendants.
-----------------------------------------------------------------------X

---

### MEMORANDUM OF LAW BY MARBIL INVESTORS, LLC, WILLIAM J. CHRISTIE AND EMMETT CHRISTIE FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56.

---

Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP
*Attorneys for Defendants*
The Omni
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553

<u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ................................................................................................................ 16

    POINT I

    PLAINTIFF FAILS TO STATE A CLAIM FOR UNPAID WAGES AND UNPAID
    OVERTIME UNDER THE FAIR LABOR STANDARDS ACT AND NEW YORK LABOR
    LAW............................................................................................................ 17

    POINT II

    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 195(1) OF THE NEW YORK
    LABOR LAW ............................................................................................. 20

    POINT III

    PLAINTIFF FAILS TO STATE A CLAIM RETALIATION UNDER NEW YORK LABOR
    LAW §215............................................................................................... 21

    POINT V

    PLAINTIFF FAILS TO STATE A CLAIM FOR QUANTUM MERUIT............................. 23

CONCLUSION............................................................................................................. 23

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby*, Inc.,
   477 U.S. 242 (1986) ................................................................... 16

*Bongat v. Fairview Nursing Care Ctr., Inc.,*
   341 F.Supp.2d 181 (E.D.N.Y.2004) ........................................... 23

*Carter v. Tuttnaeur U.S.A. Co.,*
   78 F. Supp. 3d 564 (E.D.N.Y. 2015) .......................................... 23

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................... 16

*Chen v. Major League Baseball,*
   6 F.Supp.3d 449 (S.D.N.Y. 2014) .............................................. 17

*Copantitla v. Fiskardo Estiatorio*, Inc.,
   788 F. Supp. 2d 253 (S.D.N.Y. 2011) ........................................ 21

*Doninger v. Niehoff,*
   642 F.3d 334 (2d Cir. 2011) ....................................................... 16

*Fermin v. Las Delicias Peruanas Restaurant, Inc.*,
   93 F.Supp.3d 19 (E.D.N.Y. 2015) .............................................. 17

*Guan Ming Lin v. Benihana New York Corp.*,
   2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012) ............................. 20

*Higueros v. New York State Catholic Health Plan, Inc.,*
   630 F.Supp.2d 265 (E.D.N.Y. 2009) ..................................... 21, 22

*Kuebel v. Black & Decker Inc*.,
   643 F.3d 352 (2d Cir. 2011) ....................................................... 19

*Lundy v. Catholic Health System of Long Island Inc*.,
   711 F.3d 106 (2d Cir. 2013) .................................................. 13, 19

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*.,
   475 U.S. 574 (1986) ................................................................... 16

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
   582 F. 3d 244 (2d Cir. 2009) ...................................................... 17

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ........................................................................................ 17

*Scarpinato v. E. Hampton Point Mgmt. Corp.*,
   2013 WL 5202656 (E.D.N.Y. Sept. 13, 2013) ........................................................ 23

*SCR Joint Venture L.P. v. Warshawsky*,
   559 F.3d 133 (2d Cir. 2009) ...................................................................................... 16

*Stringer v. Musacchia*,
   869 N.Y.S.2d 362 (2008) .................................................................................... 18, 19

*Strom v. Goldman, Sachs & Co.*,
   202 F.3d 138 (2d Cir.1999) ....................................................................................... 23

*Ting Yao Lin v. Hayashi Ya II, Inc.*,
   2009 WL 289653 (S.D.N.Y. Jan 30, 2009) ............................................................. 22

*Walling v. Portland Terminal Co.*,
   330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947) ................................................... 18

*Wrobel v. County of Erie*,
   692 F.3d 22 (2d Cir. 2012) ........................................................................................ 16

**Statutes**

29 U.S.C. § 203(s)(1)(A)(i)-(ii) ........................................................................................ 17

29 U.S.C. § 206(a) ........................................................................................................... 17

29 U.S.C. § 207(a) ........................................................................................................... 17

Labor Law § 2[5] ............................................................................................................. 18

Labor Law § 215 .............................................................................................................. 22

Labor Law §195(1) ........................................................................................................... 20

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 16

Fed. R. Civ. P. 56(c)(1)(A) .............................................................................................. 16

PRELIMINARY STATEMENT

The Defendants, Marbil Investors, LLC (hereinafter "Marbil"), William J. Christie (hereinafter "William") and Emmett Christie (hereinafter "Emmett") (collectively hereinafter "Defendants"), respectfully submit this memorandum of law in support of the instant motion for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking an order granting summary judgment dismissing the First, Second, Third, Fourth, Fifth and Seventh Claims for Relief. It is noted that the Plaintiff failed to plead a Sixth Claim for Relief.

It is respectfully submitted that this Court should grant the instant motion all respects due to the facts that (i) the Plaintiff was not an employee of the Defendants; (ii) the Plaintiff did not work any hours for the benefit of the Defendants and did not work any overtime for the benefit of the Defendants; (iii) the Plaintiff was not permitted or suffered to perform the very work that her husband, Roger Figurowski, was hired and paid by Defendant, Marbil, to perform and to the extent that the Plaintiff intercepted any communications intended for her husband, Roger Figurowski, and/or performed any services as a result thereof she did so as a volunteer strictly for the benefit of and to conceal the fact that her husband, Roger Figurowski, was no longer qualified to perform the duties of his position; (iv) the Plaintiff is not owed any wages or any other monies for any hours worked or services rendered to the Defendants; (v) the Plaintiff was not an employee of the Defendants and, thus, the Defendants were not required to maintain payroll records for the Plaintiff under Section 195 of the New York Labor Law; (vi) Plaintiff has no private right of action to recover under Section 195(1) of the New York Labor Law; (vii) the Plaintiff did not engage in any protected activity while the Plaintiff was an employee of the Defendants; (viii) the Plaintiff not was not subject to any retaliation as a result of having engaged in any protected activity while the Plaintiff was an employee of the Defendants; (ix) the

1

purported retaliatory acts alleged by Plaintiff preceded the Plaintiff's alleged engagement in purported protected activity; (x) the purported retaliatory acts alleged by Plaintiff do not rises to the level of an adverse employment action to support a claim for retaliation; and (xi) the Plaintiff's quantum meruit claim is frivolous as the Plaintiff has an adequate statutory remedy.

<u>STATEMENT OF FACTS</u>

The relevant facts are set forth in the accompanying Affidavit of Defendant, Emmett P. Christie, and shall only be repeated herein as is necessary.

At all times relevant, the Greenbrier Luxury Garden Apartments complex has been and is a two story residential property comprised of 81 rental units.[1] The Defendant, Marbil, acquired the Greenbrier Luxury Garden Apartments in 1980.[2] The Greenbrier Luxury Garden Apartments were purchased as a middle income apartment complex intended to be, and, in fact, has been operated as a move-in ready facility in which each apartment is equipped with a refrigerator and a stove and the complex provides each resident access to coin operated laundry facilities.[3] Upon acquiring the Greenbrier Luxury Garden Apartments, the Defendant, Marbil, retained the services of Robert Thek of Robert Thek & Associates to act as property manager.[4] As property manager, Robert Thek was responsible for the hiring, firing of all the employees at the Greenbrier Luxury Garden Apartments.[5] As property manager, Robert Thek was also responsible for recommending salaries, salary increases, employee benefits and benefit changes all the employees at the Greenbrier Luxury Garden Apartments.[6]

---

[1] See paragraph 6 of the Affidavit of Emmet P. Christie dated March 23, 2017.
[2] *Id*. at paragraph 5.
[3] *Id*. at paragraph 7.
[4] *Id*. at paragraph 8.
[5] *Id*. at paragraph 9.
[6] *Id*. at paragraph 10.

In 1992, the Plaintiff's husband, Roger Figurowski, responded to a newspaper advertisement placed by Robert Thek & Associates for a superintendent position.[7] Upon meeting with Robert Thek of Robert Thek & Associates the Plaintiff's husband, Roger Figurowski, was employed directly by Robert Thek & Associates as a trial superintendent at a property known as the Country Club Gardens, which was not associated with any of the Defendants.[8]

In March of 1992, the Plaintiff and her husband, Roger Figurowski, met with Robert Thek of Robert Thek & Associates in regard to the position as the sole live-in residential superintendent of the Greenbrier Luxury Garden Apartments which required, among other things, that the Plaintiff be responsible not only for maintaining the complex, but also for showing the apartments, collecting the rents, dealing with problems that arise and supervising three to four maintenance workers.[9] In March 1992, Plaintiff's husband, Roger Figurowski, was hired as the sole live-in residential superintendent of the Greenbrier Luxury Garden Apartments and was assigned the responsibilities of overseeing building maintenance, supervising workers, checking and showing apartments, making phone calls to prospective tenants, collecting rents, depositing rents into Defendant, Marbil's, bank account, collecting and reviewing wage statements from prospective tenants, assisting in tenant evictions and dealing with day-to-day problems as they arose and the Plaintiff retained each of those duties from the time he was hired in 1992 until the time that he was terminated in May of 2014.[10]

Plaintiff's husband, Roger Figurowski, testified that in his last position as a superintendent the Plaintiff would help out in the office without pay and eventually went out and got a job at Sears and, therefore, had no expectation of being compensated for helping her

---

[7] *Id*. at paragraph 11.
[8] *Id*. at paragraphs 12-13.
[9] *Id*. at paragraph 14.
[10] *Id*. at paragraphs 15-17.

husband out in the performance of his duties as superintendent.[11]  In fact, the Plaintiff testified that at the time the Plaintiff's husband, Roger Figurowski, was hired in 1992, she was not hired to perform any work at the Greenbrier Luxury Garden Apartments, had no expectation of compensation and, in fact, did not perform any work at or on behalf of the Greenbrier Luxury Garden Apartments.[12]

At the time Plaintiff's husband, Roger Figurowski, was hired, as part of his compensation as the sole live-in residential superintendent of the Greenbrier Luxury Garden Apartments, the Plaintiff's husband, Roger Figurowski, was provided with a rent free two bedroom apartment, apartment 311-2, where he resided with Plaintiff throughout his tenure as the sole live-in residential superintendent.[13]  The two bedroom apartment provided to the Plaintiff's husband upon his hire in 1992, had a living room, dining area and kitchen that came equipped with a refrigerator and a stove.[14]  The rental value of the two bedroom apartment provided to the Plaintiff's husband upon his hire in 1992 was $699.[15]  In addition to the free two bedroom apartment, Defendant, Marbil, also picked up the Plaintiff's husband's monthly utility and telephone expenses for the apartment for the entirety of Plaintiff's husband's tenure.[16]

In addition to being provided with ample shop space, as the sole live-in residential superintendent of the Greenbrier Luxury Garden Apartments, the Plaintiff was provided with a superintendent's office that came complete with all of the business necessities including a desk, chairs and a telephone for the Plaintiff's use for business purposes.[17]  Eventually, the Defendant,

---

[11] *Id*. at paragraph 19.
[12] *Id*. at paragraph 18.
[13] *Id*. at paragraph 20.
[14] *Id*. at paragraph 24.
[15] *Id*. at paragraph 22.
[16] *Id*. at paragraph 23.
[17] *Id*. at paragraph 21.

Marbil, updated the superintendent's office and added a computer for Plaintiff's use.[18]  The superintendent's office at the Greenbrier Luxury Garden Apartments complex was maintained separate and distinct from the two bedroom apartment, 311-2, that was provided to the Plaintiff upon his hire in 1992.[19]

For most of Plaintiff's husband's tenure, the Plaintiff and her husband, Roger Figurowski, resided in apartment 311-2, the two bedroom apartment provided to the Plaintiff's husband, Roger Figurowski, upon his hire in 1992, with their four children, Joey, Mikey, Timmy and Kelly.[20] During the course of the Plaintiff's husband, Roger Figurowski's, tenure his children would attend school during the day and return home between 2:30 and 3:30 pm on regular days.[21]  Upon returning home from school, the Plaintiff's children would not be attended to by a sitter or care giver other than the Plaintiff.[22] The Plaintiff's children would also participate in extracurricular activities, such as music, orchestra, cheerleading, football, basketball, volleyball, lacrosse and wrestling after school and on weekends.[23]  The Plaintiff would regularly participate in carpooling for her children's extracurricular activities and she would regularly attend their concerts, performances, meets, matches and games.[24]

In 2009, the Plaintiff and her husband, Roger Figurowski, obtained a $305,200.00 mortgage from Greenpoint Mortgage Funding, Inc., to purchase the property known as 50 Lennox Avenue in Hicksville, New York.[25]  The Plaintiff and her husband, Roger Figurowski, however, were unable to make the $1,979.53 monthly mortgage payment, which resulted in

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at paragraph 25.
[21] *Id.* at paragraph 26.
[22] *Id.* at paragraph 27.
[23] *Id.* at paragraph 28.
[24] *Id.* at paragraph 29.
[25] *Id.* at paragraph 30.

Plaintiff and her husband, Roger Figurowski, filing for bankruptcy in 2009.[26]  As part of the bankruptcy filings, Plaintiff filed a bankruptcy schedule in which both Roger and Dorothy Figurowski certified that the Plaintiff's occupation was a homemaker.[27]  As part of the bankruptcy filings, the Plaintiff filed an affidavit of income in the bankruptcy proceeding certifying her occupation as a homemaker.[28] The Plaintiff has testified that at the time the bankruptcy proceeding had been filed she did not have a claim against the Defendants for wages as she did not perform work as the administrator or rental manager for the Greenbrier Luxury Garden Apartments.[29]

In 2012, Robert Thek's mental and physical faculties had deteriorated to the point where it was becoming evident and noticeable to Defendant, William J. Christie, and the Plaintiff's husband.[30]  In an attempt to capitalized on Robert Thek's diminishing capacities, on May 14, 2012, the Plaintiff and her husband, Roger Figurowski, sent a letter to Defendant, Marbil, to complain that as the sole live-in residential superintendent of the Greenbrier Luxury Garden Apartments the Plaintiff's husband, Roger Figurowski, should be reimbursed for unverifiable expenses and benefits, including, but not limited to, overtime compensation, unused vacation time and cell phone expenses for work use.[31] As an exempt employee the Plaintiff's husband, Roger Figurowski's, contentions were rebuked and the Plaintiff was reminded that she was not an employee of the Defendants, but more importantly, the Plaintiff nor her husband were treated any differently by the Defendants and suffered no adverse employment action as result of having

---

[26] *Id*. at paragraph 31.
[27] *Id*. at paragraph 21
[28] *Id*. at paragraph 33.
[29] *Id*. at paragraph 34.
[30] *Id*. at paragraph 36.
[31] *Id*. at paragraph 37.

raised the claims set forth in the May 14, 2012 for additional compensation, benefits and unverifiable cell phone expenses.[32]

In August 2012, Robert Thek, in his diminished capacity, entered into an oral agreement with Plaintiff to pay a commission of $200.00 for each apartment that she helped rent.[33] Robert Thek advised Plaintiff that she would have to submit invoices to him for any amounts she was requesting to be paid as a commission for any apartment that she helped rent.[34] From August 28, 2012 through June 25, 2013, Robert Thek paid Plaintiff the sum total of $2,400.00 in commissions for the rental of twelve apartments at the Greenbrier Luxury Garden Apartment complex.[35] In addition, on February 13, 2013, Plaintiff sent Robert Thek an invoice for $350.00 for her three sons shoveling snow during a blizzard.[36] Plaintiff also sent Robert Thek an invoice on February 20, 2013, for Plaintiff's husband, Roger Figurowski's, car insurance which was paid.[37] On August 12, 2013, Defendant, Emmett Christie, learned of the commission arrangement between Plaintiff and Robert Thek and immediately advised the Plaintiff that the commission arrangement that she had worked out with Robert Thek, to perform the rental work, that was part of Roger Figurowski's job responsibilities, had not been approved by Defendant, Marbil, and would cease immediately.[38]

In 2013, the Greenbrier Luxury Garden Apartments complex undertook a major Capital Improvement project to replace the boilers at the complex a cost to Defendant, Marbil, of between $400,000.00 and $500,000.00 for the installation of the new technically advanced

---

[32] *Id*. at paragraph 38.
[33] *Id*. at paragraph 38.
[34] *Id*. at paragraph 40.
[35] *Id*. at paragraph 41; Exhibit "7" annexed" to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[36] *Id*. at paragraph 48; Exhibit "8" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017
[37] *Id*. at paragraph 49; Exhibits "7" and "9" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017
[38] *Id*. at paragraph 51.

heating system.[39]  Defendant, Marbil, had contracted with a third-party for the supply and installation of the new technically advanced heating system for the Greenbrier Luxury Garden Apartments complex.[40]  The maintenance and repair of the newly installed technically advanced heating system installed at the Greenbrier Luxury Garden Apartments complex was covered under a limited manufacturer's warranty.[41]

In or about March of 2013, Robert Thek directed the Plaintiff's husband, Roger Figurowski, to renovate the bathroom in apartment 311-3 at the Greenbrier Luxury Garden Apartments complex and rent it out.[42]  Upon completing the renovation of the bathroom in apartment 311-3, while Robert Thek was absent from the Greenbrier Luxury Garden Apartment complex due to his diminished mental and physical capacities, the Plaintiff and her husband, Roger Figurowski, in August of 2013, cut a hole through the wall of apartment 311-2 in order to convert apartment 311-3 for their own occupancy.[43]  In order to further conceal their unauthorized conversion of apartment 311-3 and in order to avoid alerting LIPA or incurring any bills for the electricity used during their occupancy of apartment 311-3, the Plaintiff and his wife, Dorothy Figurowski, ran an extension down to the basement area of Building 311 and tapped into the building's common power supply.[44]  Plaintiff and her husband, Roger Figurowski's, illegal and unauthorized occupancy of and illegal and unauthorized modifications to the electrical supply to apartment 311-3 recklessly put the lives and safety of the residents of the Greenbrier Luxury Garden Apartments and the general public at substantial risk of serious harm.[45]

---

[39] *Id*. at paragraph 42.
[40] *Id*. at paragraph 43.
[41] *Id*.
[42] *Id*. at paragraph 50.
[43] *Id*. at paragraph 52.
[44] *Id*. at paragraph 53.
[45] *Id*. at paragraph 55.

In December of 2013, due to diminished capacity, Robert Thek of Robert Thek & Associates was terminated as the property manager of the Greenbrier Luxury Garden Apartment complex.[46] In December of 2013, Defendant, Barbara Lieb of Vea Las Vistas, Inc., was retained by Marbil to replace Robert Thek and Robert Thek & Associates.[47] Shortly thereafter, in January 2014, Barbara Lieb discovered during a property inspection that the Plaintiff and his wife, Dorothy Figurowski, had cut a hole through the wall of apartment 311-2 and ran an extension cord down to the basement area of Building 311 and tapped into the building's common power supply in order to occupy apartment 311-3.[48] Due to the substantial risk to the health and safety of the residents of the Greenbrier Luxury Garden Apartment complex and the general public, posed by the Plaintiff and his wife, Dorothy Figurowski's, trespass, conversion and unlawful modifications to apartment 311-3, it was incumbent upon the Defendants to secure the area from further trespass by the Plaintiff and his wife, Dorothy Figurowski.[49] As such, Defendant, Barbara Lieb, directed the Plaintiff and his wife, Dorothy Figurowski, to immediately vacate apartment 311-3, close up the pass-through to apartment 311-2 and remove the illegal wiring.[50] Almost immediately after the Plaintiff and his wife, Dorothy Figurowski, vacated apartment 311-3 after six months of unauthorized occupancy, closed up the pass-through to apartment 311-2 and removed the illegal wiring, apartment 311-3 rented for $1,099.00.[51] The Plaintiff and his wife, Dorothy Figurowski, occupied apartment 311-3 from August through January without paying Defendant, Marbil, any rent for the apartment or paying for any of the

---

[46] *Id*. at paragraph 56.
[47] *Id*. at paragraph 57.
[48] *Id*. at paragraph 58.
[49] *Id*. at paragraph 59.
[50] *Id*. at paragraph 60.
[51] *Id*. at paragraph 61.

utilities used during the occupancy resulting in a net loss to the Defendant, Marbil, of at least $7,000.00 in lost rent and theft of utilities.[52]

On January 27, 2014, Defendant, Emmett Christie, advised Plaintiff's husband, Roger Figurowski, by letter that the unauthorized occupancy and illegal wiring of apartment 311-3 were both illegal and extremely hazardous to the tenants of the entire building and put the Plaintiff's husband, Roger Figurowski, on notice that Defendant, Marbil, was evaluating his future employment status and notified him that a decision would be rendered based on the serious infractions.[53] Thereafter, Defendant, Barbara Lieb, also discovered that the Plaintiff and Plaintiff's husband, Roger Figurowski, were also occupying areas in the basement of Building 311 for their own use as a storage/laundry area without paying rent for the use of the space.[54] It was later discovered that the Plaintiff and Plaintiff's husband, Roger Figurowski, were also occupying another room for their kids to use as an exercise room without paying rent for the use of the space.[55]

As a result of the Plaintiff's husband, Roger Figurowski's, reckless operation, repair and modifications of the new heating system, unauthorized occupation and conversion of and the Plaintiff and Plaintiff's husband, Roger Figurowski's, reckless modification to the electrical supply to apartment 311-3, unauthorized occupation of basement storage/laundry room and unauthorized occupation of basement exercise room, and upon finding a qualified superintendent, on May 2, 2014, the Plaintiff's husband, Roger Figurowski, was advised that his employment was being terminated.[56] Upon terminating the Plaintiff's husband, Roger Figurowski, the Defendant, Marbil, offered Plaintiff's husband, Roger Figurowski, a severance

---

[52] *Id*. at paragraphs 62 and 63.
[53] *Id*. at paragraph 63.
[54] *Id*. at paragraph 64.
[55] *Id*. at paragraph 65.
[56] *Id*. at paragraph 66.

package which included a month's occupancy of apartment 311-2 without having to pay rent and four weeks' severance pay, to be paid in two instalments, in exchange for the Plaintiff, Plaintiff's husband, Roger Figurowski, and their family vacating apartment 311-2 on June 17, 2014.[57] The first installment of the severance pay was provided to the Plaintiff's husband, Roger Figurowski, on May 2, 2014.[58] Upon Plaintiff's husband, Roger Figurowski's, termination on May 2, 2014, the new superintendent, James Bagger, secured the return of the keys provided to Plaintiff's husband, Roger Figurowski, for the Greenbrier Luxury Garden Apartment complex and immediately secured all of the basement rooms the Plaintiff and her husband, Roger Figurowski, were illegally occupying, inclusive of securing the door to the basement storage/laundry room the Plaintiff and her husband, Roger Figurowski, had been occupying.[59]

Defendant, Marbil, secured the return of the keys the Plaintiff's husband, Roger Figurowski, was provided and proceeded to have the new superintendent, James Bagger, secure the Greenbrier Luxury Garden Apartment complex, inclusive of securing the door to the basement storage room the without paying rent. [60] Upon securing and inspecting, it was discovered that the Plaintiff and Plaintiff's husband, Roger Figurowski, had modified both the plumbing and electrical systems in the basement storage/laundry room without authorization, without having obtained any building permits and without having had any of the modifications inspected by a licensed contractor.[61] The Plaintiff and Plaintiff's husband, Roger Figurowski, had used the storage/laundry room to hoard piles of clothes, junk and flammable items in close proximity to chemicals and illegal laundry equipment which recklessly placed the health and

---

[57] *Id*. at paragraph 66.
[58] *Id*. at paragraph 72; See Exhibit "13" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[59] *Id*. at paragraph 66.
[60] *Id*. at paragraph 67.
[61] *Id*. at paragraph 68.

safety of the residents of the Greenbrier Luxury Garden Apartment at substantial risk of harm.[62]
Due to the risk to the health and safety of the residents of the Greenbrier Luxury Garden
Apartment complex and the general public, posed by the Plaintiff and her husband, Roger
Figurowski's, trespass, conversion and unlawful modifications to the communal basement area
of the Greenbrier Luxury Garden Apartment, it was incumbent upon the Defendants to secure the
area from further trespass by the Plaintiff, Roger Figurowski, and his wife, Dorothy.[63]

 At no time did any of the Defendants discriminate and/or retaliate against the Plaintiff or
her husband, Roger Figurowski.  Instead, the Defendants had an affirmative obligation to the
safety of others to take control of the communal areas of Greenbrier Luxury Garden Apartment
complex that the Plaintiff and her husband, Roger Figurowski, and their family were trespassing
upon.[64]  At no time on or prior to May 2, 2014 did the Plaintiff's husband, Roger Figurowski,
complain or advise the Defendants that he was being discriminated based upon his age.[65] At no
time on or prior to May 2, 2014 did Plaintiff advise the Defendants that she intended to file a
lawsuit or make a claim to wage and hour violations.[66] At no time did any of the Defendants
discriminate and/or retaliate against the Plaintiff and Plaintiff's husband, Roger Figurowski.[67]

 On June 2, 2014, the Plaintiff and her husband, Roger Figurowski, requested access to the
basement storage/laundry room to remove their belongings and the Defendants provided them
supervised access.[68]  On June 2, 2014, the Plaintiff and her husband, Roger Figurowski's,
counsel wrote a letter to advise Defendant, Marbil, for the first time that the Plaintiff and her
husband, Roger Figurowski, had intended to file a lawsuit and/or make a claim for age

---

[62] *Id*. at paragraph 69; Exhibit "17" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[63] *Id*. at paragraph 70.
[64] *Id*. at paragraph 71.
[65] *Id*. at paragraph 75.
[66] *Id*. at paragraph 76.
[67] *Id*. at paragraph 85.
[68] *Id*. at paragraph 79.

discrimination and wage and hour violations.[69] At no time between May 2, 2014 and

Defendants' receipt of Plaintiff's counsel's letter dated June 2, 2014 did Plaintiff or her husband,

Roger Figurowski, complain about age discrimination or wage and hour violations, nor did they

advise the Defendants that they intended to file a claim of age discrimination or wage and hour

violations, nor did they advise the Defendants that they that they were being retaliated against as

a result of having raised any alleged age discrimination or wage and hour violations.[70]  On June

10, 2014, the Plaintiff and her husband, Roger Figurowski, again requested access to the

basement storage room to remove more of their belongings and the Defendants provided them

supervised access.[71]  At no time did any of the Defendants discriminate and/or retaliate against

the Plaintiff or his wife, Dorothy Figurowski.

On June 17, 2014, the Plaintiff and her husband, Roger Figurowski, vacated apartment

311-2 and upon vacating the Plaintiff and her husband, Roger Figurowski, removed the

refrigerator and stove.[72]  By removing the refrigerator and stove, apartment 311-2 was not in the

same condition that it was in when the Plaintiff and her husband, Roger Figurowski, took

possession of apartment 311-2.[73]

On February 11, 2015, an initial conference in the action commenced by Plaintiff, during

which the Court noted that the Plaintiff had not met the *Lundy* standard for pleading an FLSA

claim and granted an application for Plaintiff to amend her pleadings.[74] Thereafter, Plaintiff

caused to be filed an amended complaint containing amended allegations at paragraph "21" that

from January 6th, 2014 to January 10th, 2014, Plaintiff worked fifty-five hours, which included

---

[69] *Id*. at paragraph 80.
[70] *Id*. at paragraphs 76-78.
[71] *Id*. at paragraph 81.
[72] *Id*. at paragraph 82.
[73] *Id*. at paragraph 83.
[74] *Id*. at paragraph 86.

fifteen hours of overtime.[75] Plaintiff's amended complaint withdrew the allegation raised at

paragraph "18" that "[u]nder the full knowledge and supervision of owners William Christie and

Emmett Christie, and Ms. Barbara Lieb, current Greenbrier property manager, "the Plaintiff

remained in the apartments seven days a week during which time she worked as rental agent and

office clerical, during all times from March 1992 to May 2014" and instead alleged at paragraph

"18" of the amended complaint that "[t]he Defendants suffered and/or permitted Plaintiff to

perform work as rental agent and office clerical for Defendants' benefit from March 1992 to May

2014."[76] Plaintiff's amended complaint further amended the original complaint to include the

allegation at paragraph "19" that plaintiff "collected rental applications and related information,

checked and showed apartments to prospective tenants, and called and emailed Defendants with

updates on the status of the complex and its occupancy."[77]  In direct response to the Court's

February 11, 2015, notification that the Plaintiff had not met the *Lundy* standard for pleading an

FLSA claim, the Plaintiff's amended complaint modified the allegations at paragraph "21" to

specifically allege that "from January 6, 2014 to January 10, 2014, plaintiff worked fifty-five

(55) hours, which included 15 hours of overtime."[78]

On September 1, 2015, Plaintiff was served with the Defendants' first set of

interrogatories and first request for the production of documents.[79]  On September 23, 2016,

Plaintiff served verified interrogatory responses that failed to identify any date from 2007 to

present that the Plaintiff actually worked from 9:00 a.m. to 5:00 p.m.[80]  Plaintiff's verified

interrogatory responses also failed to identify any week that Plaintiff worked more than forty

---

[75] *Id*. at paragraph 87.
[76] *Id*. at paragraph 88.
[77] *Id*. at paragraph 89.
[78] *Id*. at paragraph 90.
[79] *Id*. at paragraph 92; Exhibit "16" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[80] *Id*. at paragraph 93; Exhibit "15" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.

(40) hours.[81]  Plaintiff's verified responses also certified that, in response to the demand that she "identify with specificity the documents relied upon by Plaintiff in amending her complaint to include allegations that from January 6, 2014 to January 10, 2014, Plaintiff worked fifty-five (55) hours, which included 15 hours of overtime as set forth in paragraph '21" of the Amended Complaint," she did not have responsive documents for this request.[82]

At the Plaintiff's deposition on February 24, 2016, Plaintiff could not identify any particular week from 2007 to present that the she worked more than forty (40) hours.[83]  At the Plaintiff's deposition on February 24, 2016, Plaintiff could not recall the fifteen hours of alleged overtime she claims to have worked from January 6, 2014 to January 10, 2014.[84] At Plaintiff's deposition on February 24, 2016, Plaintiff testified that her amended claim of having worked forty hours and fifteen hours overtime was a guesstimate.[85]  Despite Plaintiff's verified responses that specifically and affirmatively stated that she was not in possession of documents relied upon in amending her complaint to include allegations that "from January 6, 2014 to January 10, 2014, she worked fifty-five (55) hours, which included 15 hours of overtime, and Plaintiff having no recollection of the hours actually worked at any time relevant to the pleadings, the Plaintiff testified at her February 24, 2016, deposition that she would have to review her notes, e-mails, post-it notes, apartment inquiries and telephone logs which were not produced in discovery.[86] Plaintiff has not produced any notes and/or e-mails that she did not have and could not identify at deposition which were not produced in discovery which relate to the period from January 6, 2014 to January 10, 2014, for which she claims that she worked fifty-five (55) hours, which included

---

[81] *Id*. at paragraph 94; Exhibit "15" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[82] *Id*. at paragraph 95; Exhibit "15" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[83] *Id*. at paragraph 96.
[84] *Id*. at paragraph 97.
[85] *Id*. at paragraph 98.
[86] *Id*. at paragraph 99.

15 hours of overtime.[87]  With the exception of a single e-mail correspondence on January 6, 2014, the Plaintiff's discovery responses fail to specify or detail any of the hours or overtime that she claims to have actually worked at any time relevant to the pleadings.[88]  Plaintiff testified at deposition on February 24, 2016, that just because she relayed a message to or from her husband, Roger Figurowski, in an e-mail doesn't mean that she was working beforehand or doing anything or that Roger Figurowski had not already responded.[89]

<u>ARGUMENT</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); accord *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The parties can support their claims with documents, stipulations, affidavits, or other discovery materials. *See* Fed. R. Civ. P. 56(c)(1)(A). However, "only admissible evidence need be considered by the trial court in ruling on a motion for

---

[87] *Id*. at paragraph 100.
[88] *Id*. at paragraph 101; Exhibit "15" annexed to the Declaration of Frank W. Brennan, Esq. dated March 24, 2017.
[89] *Id*. at paragraph 102.

summary judgment." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F. 3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

<u>POINT I</u>

PLAINTIFF FAILS TO STATE A CLAIM FOR UNPAID WAGES AND
UNPAID OVERTIME UNDER THE FAIR LABOR STANDARDS ACT AND
<u>NEW YORK LABOR LAW</u>

The Plaintiff's first, second and third claims for relief seeking recovery of wages and overtime under the Fair Labor Standards Act and New York State Labor Law should be dismissed as the plaintiff was not an employee of the defendants and, thus, was not entitled to the payment of wages or overtime.

Initially, to establish a claim under the FLSA for minimum wage or overtime compensation, the Plaintiff must show that he or she is an "employee" of the defendant within the meaning of the FLSA and that the defendant is an "enterprise engaged in commerce." *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F.Supp.3d 19 (E.D.N.Y. 2015); See 29 U.S.C. §§ 206(a), 207(a); see also: *Chen v. Major League Baseball*, 6 F.Supp.3d 449, 453–54 (S.D.N.Y.2014).  The FLSA defines the term "enterprise engaged in commerce" as an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done ... not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)-(ii).  The Plaintiff has failed to plead that the Defendants are "enterprise engaged in commerce" and cannot show the Defendants have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done ... not less than $500,000."  The Plaintiff has failed to plead or otherwise produce a scintilla of evidence that the Defendants, individually

17

or collectively, are an "enterprise engaged in commerce" for the purpose of invoking FLSA jurisdiction.  As such, Plaintiff's claims seeking recovery of wages and overtime under the Fair Labor Standards Act should be dismissed.

The Supreme Court, in *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809 (1947), concluded that the FLSA does not reach individuals, like the Plaintiff in the instant action, "who, without promise or expectation of compensation, but solely for ... personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit."  As testified by the Plaintiff, at the time the bankruptcy proceeding had been filed she did not have a claim against the Defendants for wages as she did not perform work as the administrator or rental manager for the Greenbrier Luxury Garden Apartments.[90]  Moreover, the Plaintiff repeatedly testified that, although there may have been some unverifiable talk of being compensated in the future, all of the work that the Plaintiff alleges to have performed was performed without promise or expectation of compensation.  As such, Plaintiff's claims seeking recovery of wages and overtime under the Fair Labor Standards Act should be dismissed.

Under New York's Labor Law the term "employee" is statutorily defined as a "mechanic, workingman or laborer working for another for hire." *Stringer v. Musacchia,* 869 N.Y.S.2d 362, 365 (2008)( Labor Law § 2[5] ). When a person has been hired, at least three factors are usually present. First, there is the voluntary undertaking of a mutual obligation—the employee agrees to perform a service in return for compensation (usually monetary) from the employer, thereby revealing an economic motivation for completing the task and an "employer" is the person who "pays the worker's salary or wages."  Second, although not an essential factor, an employer may exercise authority in directing and supervising the manner and method of the work.  Third, the employer usually decides whether the task undertaken by the employee has been completed

---

[90] *Id*. at paragraph 34.

satisfactorily. *Id.*  Applying this standard to all of the work that the Plaintiff alleges to have performed, the Plaintiff was not the Defendants' employee as the Plaintiff's interest in volunteering to perform the very work that her husband, Roger Figurowski, was hired and paid to perform was undertaken solely to conceal the fact that her husband, Roger Figurowski, was no longer qualified to perform the duties of his position and in return for her husband, Roger Figurowski, being able to keep his job and her family being able to keep apartment 311-2 (and any other spaces the were occupying without authorization) the Plaintiff voluntarily perform the very work that her husband, Roger Figurowski, was hired to perform with no expectation of being paid a wage or salary.  It should also be noted that this was the very same type of volunteer performance that the Plaintiff engaged in when she would help out in the office at her husband's last superintendent position without an expectation pay or compensation until she eventually went out and got a job at Sears.[91]

Finally, the Plaintiff has failed to present a scintilla of credible evidence that she worked any actual overtime in the three years preceding the date that she claims to have been impliedly terminated.  *Lundy*, 711 F.3d at 106.
In fact, in responding to the Defendants' discovery demands and testifying at deposition, the Plaintiff could not specifically recollect any of the hours or dates she claims to have worked and could not recollect or identify any documents that could identify any overtime during the periods from January 6th, 2014 to January 10th, 2014 or any other time. As such, Plaintiff's overtime claim fails as the Plaintiff cannot prove that she actually performed work for which he was not properly compensated, and that the Defendants had actual or constructive knowledge of that work.  See *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011).

---

[91] *Id.* at paragraph 19.

In light of the foregoing, the Plaintiff's First, Second and Third Claims for Relief should be dismissed as the Plaintiff was never an employee and failed to state a claim for unpaid wages and/or overtime under either the Fair Labor Standards Act or New York State Labor Law.

POINT II

PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION<br>195(1) OF THE NEW YORK LABOR LAW

The Plaintiff's Fourth Claim for Relief seeking recovery for the Defendants' alleged failure to provide the Plaintiff with notice of her rate of pay; the basis of her rate of pay; and other information required by Section 195(1) of the New York Labor Law should be dismissed as the Plaintiff has no private right of action to recover under Section 195(1) of the New York Labor Law.

The Plaintiff alleges in her amended complaint, at paragraph 18, to have commenced work as rental agent and office clerical in March of 1992, some seventeen years prior to the time the requirements of New York Labor Law § 195(1) took effect on April 9, 2011. "The plain language of the statute ... confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year." *Guan Ming Lin v. Benihana New York Corp.*, 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012) (finding that plaintiffs whose employment predated April 9, 2011 ineligible for recovery), *report and recommendation adopted,* 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).  As the Plaintiff's alleged commencement of employment predates April 9, 2011 the Plaintiff is ineligible to recover under New York Labor Law § 195.  Moreover, as the Plaintiff was not an employee of the Defendants she was not entitled to receive any wage notice under to Section 195 of the New York Labor Law.

20

In light of the foregoing, the Fourth Claim for Relief for Relief should be dismissed as the Plaintiff has no private right of action to recover under Section 195(1) of the New York Labor Law.

## POINT III

### PLAINTIFF FAILS TO STATE A CLAIM RETALIATION UNDER NEW YORK LABOR LAW §215

The Plaintiff's Fifth Claim for Relief should be dismissed as the Plaintiff fails to plead or otherwise allege that while employed by the Defendants she made a complaint about the Defendants' violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result.

Claims for retaliation under the New York Labor Law are determined based on a burden-shifting test. *Copantitla v. Fiskardo Estiatorio*, Inc., 788 F. Supp. 2d 253, 301–02 (S.D.N.Y. 2011). Under this burden-shifting test, Plaintiff must first establish a prima facie claim for retaliation. In order to establish a prima facie claim for retaliation "the plaintiff must adequately plead that while employed by the defendant, she made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Copantitla*, 788 F. Supp. at 301–02, *citing Higueros v. New York State Catholic Health Plan, Inc.,* 630 F.Supp.2d 265, 269 (E.D.N.Y.2009). If Plaintiff is able to establish a *prima facie* claim for retaliation, "the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Id.* at 302. Once Defendants demonstrate the legitimate non-discriminatory reason for the complained of action, it is ultimately Plaintiff who has the burden to "counter that legitimate, nondiscriminatory reason with evidence that the explanation is pretextual." *Id.*

The Plaintiff cannot establish a prima facie claim for retaliation under New York Labor Law § 215.  A cursory review of Plaintiff's amended complaint it is clear that Plaintiff alleges to have been impliedly terminated by the Defendants on May 2, 2014.  More importantly, at paragraphs 54 and 55 of Plaintiff's amended complaint, referring to Plaintiff's counsel's June 2, 2014 and June 10, 2014 letters, it is alleged that Plaintiff <u>through her counsel</u> complained to Defendants on multiple occasions about unpaid wages owed to her for her employment and as a direct and proximate result of <u>Plaintiff's counsel's</u> complaints, the Defendants locked Plaintiff and her family out of their basement storage room, which contained a washing machine and personal belongings, in retaliation for <u>Plaintiff's counsel's</u> complaints.  As such, the Plaintiff's New York Labor Law § 215 retaliation claim must be dismissed as the Plaintiff has failed to satisfy New York Labor Law § 215's pleading requirement that while employed by the Defendants she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result. *Higueros v*, 526 F.Supp.2d at 347; *Ting Yao Lin v. Hayashi Ya II, Inc.*, 2009 WL 289653, at *7 (S.D.N.Y. Jan 30, 2009)(plaintiff must show that while employed by the defendant, he made a complaint and then was terminated or otherwise penalized).

Moreover, considering the substantial risk presented to the health and safety of the residents the Greenbrier Luxury Garden Apartments complex in providing the Plaintiff and her husband, Roger Figurowski, free and unfettered access to the basement storage/laundry room it cannot be reasonably be argued that the Defendants did not have a legitimate, non-discriminatory reason for requiring that all access to the basement storage/laundry room be supervised after May 2, 2014.

In light of the foregoing, the Plaintiff's Fifth Claim for Relief should be dismissed.

POINT IV

PLAINTIFF FAILS TO STATE A CLAIM FOR QUANTUM MERUIT

The Plaintiff's Seventh Claim for Relief seeking quantum meruit and/or unjust enrichment for wages and overtime must be dismissed as a matter of law.

As this Court has already explained to Plaintiff's counsel, in *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 571–72 (E.D.N.Y. 2015), "[g]enerally, if there is an adequate remedy at law, a court will not permit a claim in equity." *Bongat v. Fairview Nursing Care Ctr., Inc.,* 341 F.Supp.2d 181, 188–189 (E.D.N.Y.2004) (citing *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144 n. 6 (2d Cir.1999)) ("Equity typically denied relief in a proceeding seeking restitution ... on the theory of unjust enrichment because the remedy at law, an action for damages, typically was adequate.").  Several courts have dismissed similar equitable claims in favor of statutory wage-claims in this precise context. *Scarpinato v. E. Hampton Point Mgmt. Corp.,* 2013 WL 5202656, at *13 (E.D.N.Y. Sept. 13, 2013) ("Since plaintiff has a New York Labor Law claim for the unpaid wages, her claim for equitable relief must be dismissed."); *Bongat,* 341 F.Supp.2d at 188–89 (dismissing *quantum meruit* and unjust enrichment claims in favor of statutory overtime-wage law claims arising from the same nexus of operative fact).

In light of the foregoing, the Plaintiff's Seventh Claim for Relief should be dismissed as a matter of law.

CONCLUSION

WHEREFORE, it is respectfully requested that the Court issue an order granting the Defendants' instant motion in its entirety and dismiss the Plaintiff's First, Second, Third, Fourth, Fifth and Seventh Claims for Relief, together with such other and further relief as the Court

deems just and proper, equitable and appropriate under the circumstances herein.

Dated:  Uniondale, New York
         March 24 2017

                                        s/_____.
                                        Frank W. Brennan, Esq.
                                        Forchelli, Curto, Deegan,
                                        Schwartz, Mineo & Terrana, LLP
                                        Attorneys for Defendants,
                                        Marbil Investors, LLC, William J. Christie,
                                        Emmett Christie and Barbara Lieb
                                        333 Earle Ovington Boulevard, Suite 1010
                                        Uniondale, New York 11553
                                        516-248-1700

To: Frank & Associates, P.C. (VIA ECF)